NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250632-U

NO. 4-25-0632

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 5, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
|     Petitioner-Appellee, | ) | No. 21JA12 |
|     v. | ) | |
| Johnny S., | ) | Honorable |
|     Respondent-Appellant). | ) | Heidi A. Benson |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Harris and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no meritorious issues could be raised on appeal.

¶ 2    In December 2024, the State filed a petition to terminate the parental rights of respondent, Johnny S., as to his minor child, J.S. (born November 2011). (J.S.'s mother, Elizabeth W., is not a party to this appeal.) In June 2025, the trial court entered an order terminating respondent's parental rights. Respondent appealed, and counsel was appointed to represent him. Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis she cannot raise any potentially meritorious arguments on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to termination of parental rights cases). For the reasons that follow, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Procedural History

¶ 5        In June 2021, the State filed a petition to adjudicate J.S. neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)). The petition alleged J.S.'s environment was injurious to his welfare because respondent "engaged in sexual relations with an adult female at times when the minor was present in the same room," and J.S. "witnessed and/or overheard the sexual activity."

¶ 6        In July 2021, the trial court held an adjudicatory hearing and entered an order adjudicating J.S. neglected as defined by section 2-3(1)(b) of the Juvenile Court Act (*id.*) in that he was in an environment injurious to his welfare. The court granted the Illinois Department of Children and Family Services (DCFS) guardianship of J.S and initially allowed respondent visitation at the discretion of DCFS.

¶ 7        In December 2024, the State filed a petition for the termination of respondent's parental rights to J.S. The State alleged respondent failed to make reasonable progress toward the return of J.S. to his care pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)).

¶ 8                                  B. The Fitness Hearing

¶ 9        In April 2025, the trial court conducted respondent's fitness hearing. The State called three witnesses: Adriana Jones, Tetyana Kostyshna, and Alexis Roach. Both Jones and Kostyshna were employed by Specialized Forensics Unit, P.C., and contributed to a psychosexual evaluation and subsequent report on respondent, as requested by DCFS. Kostyshna testified she never met with respondent in person but did speak with him on two occasions over video. She noted he was uncooperative and did not follow directions regarding scheduling his

evaluation. Despite multiple attempts on her part and on the part of DCFS, Kostyshna noted respondent was never evaluated in-person, which was crucial for a variety of different tests that could have been completed. Roach, a child welfare specialist for DCFS, testified she first became familiar with respondent in July 2021, when she was assigned to his case. Roach prepared various service plans for respondent to correct the conditions that led to respondent's initial DCFS involvement. Roach testified respondent complied with some of the recommendations of the plan, including completing a mental health assessment and some parenting classes, but did not complete others. She noted respondent was also incarcerated from 2021 to 2023, and he did receive some individual therapy during that time, as well as a psychological evaluation.

¶ 10        The State admitted respondent's psychosexual evaluation. The evaluation showed respondent met the criteria for "[o]ther specified paraphilic disorder, sexual coercion, provisional." This was based on respondent's "neglect/risk of harm and mental injury" to J.S., as well as his sexual exploitation of J.S., which included the following: reports that respondent allowed a friend to repeatedly sexually abuse J.S. and not take steps to stop the alleged abuse; J.S. disclosing that respondent taught him how to masturbate and then made J.S. masturbate in front of him; J.S. disclosing respondent forced him to put his fist up his mother's rectum; and J.S. being identified as a victim in a federal child pornography investigation. The report indicated respondent's sexual risk level could not be estimated because he did not have a history of sexual arrests, charges, or convictions, and a clinical interview was not completed. Despite this, respondent was observed to have risk factors that could be targeted in treatment, including sexualized violence, lack of concern for others, poor problem-solving skills, impulsiveness, and negative social influences. The report recommended respondent not be left alone with children or

animals and be required to partake in psychological testing to understand his healthy or unhealthy sexual preferences and determine whether he meets the criteria for certain personality disorders.

¶ 11     Respondent then testified on his own behalf. He explained he thought he completed all the requirements of his service plan, except for a psychosexual evaluation. He admitted there were some weeks he was not in contact with Roach, his caseworker, because he was incarcerated. He also acknowledged, at other times, he could not take the psychosexual evaluation because he was paroled to Indiana and needed permission to leave the state. In the end, respondent never came to Illinois to complete the psychosexual assessment.

¶ 12     Following closing arguments, the trial court found by clear and convincing evidence respondent was unfit and had not made satisfactory progress toward the return of J.S. to his care. The court pointed out respondent had been indicted twice for the sexual exploitation of J.S. and did not complete all the recommendations in his service plans, including parenting classes and certain recommended evaluations.

¶ 13                    C. The Best-Interest Hearing

¶ 14     The best-interest hearing took place in June 2025. The State again called Roach, who had prepared a best-interest report. She noted J.S. had been in his foster home for over two years, had a bond with his foster parents, and had made "huge progress since being placed in their home." There were two other children in the foster parents' home, with whom J.S. had a good relationship; J.S. was involved in family outings and affairs; and the family was willing to provide J.S. permanency through adoption.

¶ 15     Respondent was called as a witness on his own behalf. He testified to the events that led to the removal of J.S. and the events that followed. He blamed J.S.'s mother as the

reason for J.S. initially being taken into care. He then attempted to justify why he was unable to complete certain evaluations and recommended courses of action, despite repeated attempts by DCFS and others involved in the case to get him to do so.

¶ 16        After hearing the evidence, the trial court determined the State proved by a preponderance of the evidence it was in J.S.'s best interest that respondent's parental rights be terminated. The court noted this case was originally adjudicated on two counts, one involving the sexual abuse of J.S. by his mother and the other involving the sexual abuse of J.S. by respondent. Respondent pleaded guilty in a separate federal case to charges for writing a death threat to J.S. to dissuade him from testifying against respondent's friend who sexually abused J.S. The court rejected respondent's claims that he pleaded guilty so he could see J.S. again. The court found respondent continued to blame J.S.'s mother was the sole reason J.S. was initially placed in care. Further, the court noted respondent never completed a sexual offender evaluation, nor did he follow the recommendations set forth in the service plans. The court observed that J.S. was well cared for in his current foster home, considered his foster parents to be his parents, and was doing well in his new environment. Accordingly, the court determined it was in J.S.'s best interest to terminate respondent's parental rights.

¶ 17        This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19        On appeal, respondent's counsel moves to withdraw on the basis it would be frivolous to argue the trial court erred in finding (1) respondent unfit and (2) it was in the best interest of J.S. to terminate respondent's parental rights.

¶ 20                                A. Unfitness

¶ 21        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West

2024)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 22        A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.*

¶ 23        Under section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit for failing "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2024). "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). Reasonable progress exists when the trial court

> "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 24        We have emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). A trial court may only consider evidence from the relevant time period in determining a parent's fitness based on

reasonable progress. *Reiny S.*, 374 Ill. App. 3d at 1046 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38 (2003)).

¶ 25        Here, the trial court's determination that respondent was unfit was not against the manifest weight of the evidence. The evidence presented at the fitness hearing revealed, during the relevant period, respondent was inconsistent, at best, regarding the recommended steps in his service plan and did not fully comply with what was required. Further, during the relevant period, he was incarcerated for a significant duration, demonstrated uncooperative behavior, and failed to adhere to scheduling directives for recommended evaluations. Despite concerns regarding sexual behaviors in this case, he did not prioritize the completion of the in-person psychosexual examinations, as recommended by DCFS and other involved parties. Respondent also did not make reasonable progress toward the return of J.S. to his care. Consequently, we agree with appellate counsel that no issue of arguable merit could be raised that the trial court's unfitness determination was against the manifest weight of the evidence.

¶ 26                    B. Best-Interest Determination

¶ 27        Counsel next submits it would be frivolous to argue it was not in J.S.'s best interest to terminate respondent's parental rights.

¶ 28        When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. The State bears the burden of proving, by a preponderance of the evidence, that termination of parental rights is in the minor's best interest. *Id.* at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

        "(1) the child's physical safety and welfare; (2) the development of the child's

identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 22.

See 705 ILCS 405/1-3(4.05) (West 2024)).

The court's best-interest determination does not need to explicitly reference each factor, and an appellate court does not need to "rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). "[A best-interest determination] is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009).

¶ 29    There is no issue of arguable merit to be raised on appeal regarding the trial court's best-interest determination, as it was not against the manifest weight of the evidence. Specifically, the court indicated it considered the evidence presented and the applicable statutory factors. The evidence showed J.S. was thriving in his new home, he was bonded to his foster parents, and they were willing to adopt him. While respondent maintained a desire to have a relationship with his son and wanted to establish a relationship with him, "at a best-interests

hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. In addition, respondent continued to blame J.S.'s mother for J.S. ending up in DCFS's care and made excuses as to why he was not able to complete the recommended services to have J.S. returned to him. Moreover, the court was unpersuaded by respondent's explanation as to why he pleaded guilty to a federal crime he claimed he did not commit (making death threats against J.S. to scare him into not testifying about the sexual abuse that occurred at the hands of respondent's friend) because he thought it would allow him to reunite with J.S. Considering all these factors, it was not against the manifest weight of the evidence for the court to find that terminating respondent's parental rights was in J.S.'s best interest.

¶ 30                                 III. CONCLUSION

¶ 31          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 32          Affirmed.